1
2
3
4
5
6
7
8
9                    **UNITED STATES DISTRICT COURT**
10        **CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**
11
12  MARTHA ANTONIA M. SOLTERO,    )    Case No. CV 13-04242 (AS)
                                  )
13              Plaintiff,        )    **MEMORANDUM OPINION**
                                  )
14        v.                      )
                                  )
15  CAROLYN W. COLVIN, Acting     )
    Commissioner of Social        )
16  Security,                     )
                                  )
17              Defendant.        )
    _____)
18
19                         **PROCEEDINGS**
20
21       On June 19, 2015, Plaintiff filed a complaint filed a Complaint
22  seeking review of the denial of her applications for disability
23  insurance benefits ("DIB"), and supplemental security income ("SSI").
    (Docket Entry No. 3.)   The parties consented to proceed before the
24  undersigned United States Magistrate Judge.  (Docket Entry Nos. 14-15).
25  On November 14, 2014, Defendant filed an Answer along with the
26  Administrative Record ("AR").  (Docket Entry Nos. 18-19).  The parties
27  filed a Joint Stipulation ("Joint Stip.") on January 16, 2014, setting
28  forth their respective positions regarding Plaintiff's claim.  (Docket
    Entry No. 20).

                                1

The Court has taken this matter under submission without oral argument.  See C.D. Cal. L.R. 7-15.

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On July 7, 2010, Plaintiff, a former teacher's aide, filed applications for a period of disability or Disability Insurance Benefits and for Supplemental Social Security Income. (AR 155-170).  Both applications alleged an inability to work since September 30, 2009 due to depression, diabetes, high blood pressure and high cholesterol. (AR 156-70, 177).  On October 25, 2011, the Administrative Law Judge ("ALJ"), Ariel L. Sotolongo, examined the record and heard testimony from Plaintiff and vocational expert Sandra Trost. (Id. 27-51). On November 23, 2011, the ALJ issued a decision denying Plaintiff's applications. The ALJ determined that since the date last insured Plaintiff had severe impairments -- Diabetes Mellitus and depression -- but found that Plaintiff was not disabled within the meaning of the Social Security Act. (See AR 10-18).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 5-6).  The request was denied on April 22, 2013. (AR 1-3).   The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision.  See 42 U.S.C. §§ 405(g); 1383(c).

### PLAINTIFF'S CONTENTION

Plaintiff alleges the ALJ erred in failing to properly consider the opinion of her treating physician. (See Joint Stip. at 3-7).

2

**DISCUSSION**

**A.   The ALJ Did Not Err in Weighing the Opinion of Plaintiff's Treating Doctors**

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. § 416.927(b)-(d).  If the treating doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the treating physician's opinion.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(as amended); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC")[1] to perform light work in that she can lift or carry 20 pounds occasionally and 10 pounds frequently, she can stand or walk for 6 hours out of an 8-hour workday, she can perform frequent postural activities (e.g., climb, balance, stoop, kneel, crouch or crawl), and she can perform simple work in a low stress environment (where there is no rapid production or required rigid quotas).  (See AR 15).

The ALJ addressed opinion evidence as follows:

---

[1]   A Residual Functional Capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

As for the opinion evidence, I reject the exaggerated GAF scores given by the treating sources (e.g., 40 (Ex. 3F) and 45 (Ex. 18F 23) as more related to environmental factors (Axis IV) or conditions (e.g., unemployment) than to vegetative symptoms from a psychiatric impairment.  As I noted earlier, the treating record indicates that the claimant had trouble getting a job not that she was unable to perform work activities.  I therefore give much weight to the findings and opinion of the psychiatric consultative examiner, who found mild to moderate symptoms and limitations (Ex. 8F 5).  Some weight is also afforded the DDS reviewing sources to the extent that their opinions are consistent with the consultative examining medical opinion and the above residual functional capacity assessment (Ex. 10F, 11F).  (AR 16).

To the extent that Plaintiff is challenging the ALJ's rejection of the opinion(s) of Plaintiff's treating physician(s) (see Joint Stip. at 5-6), it is not clear as to which opinion(s) Plaintiff is referring. Plaintiff has not identified the name of any treating physician who provided an opinion about her ability to perform work activities.  The record does not contain any treating physician's opinion about Plaintiff's ability to perform work activities (see AR 202-254, 303-350 [Plaintiff's medical records from Los Angeles County/University of Southern California Medical Center ("LAC/USC"), Exodus Recovery Urgent Care Center ("Exodus"), Amanecer Community Counseling Services ("Amanecer")]).[2]

---

[2]    A March 10, 2011 report entitled "Case Analysis - Psych," prepared by R.E. Brooks, M.D., apparently from LAC/USC, contains the following statements about Plaintiff's ability to perform work activities -- "Moderate limitation in ability to adapt to stress is described, as well as in area of attending and performing work on a consistent basis.  Other work related abilities are not described as limited.  Overall information supports ability to perform simple, routine, repetitive work." (See AR 313-14).  However, Dr. Brooks was identified in the report as a consultant, not a treating physician.

4

Plaintiff appears to be mistakenly equating the opinion of a treating physician with the treatments notes of a treating physician. (See Joint Stip. at 4, 6). However, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2). Thus, the Court is unable to find that the ALJ improperly rejected an opinion of Plaintiff's treating physician(s). Moreover, while Plaintiff contends that the ALJ was required to provide an explicit explanation of the weight given to the opinion(s) of Plaintiff's treating physician(s) (see Joint Stip. at 6), the absence of such opinions rendered it unnecessary for the ALJ to give an explicit explanation.

To the extent that Plaintiff is contending that the ALJ failed to properly evaluate Plaintiff's Global Functioning ("GAF") scores (which were given by treating physicians or by the consultative examiner) in determining Plaintiff's mental RFC (see Joint Stip. at 3-7, citing AR 222 [in an undated report by a M.D. at Exodus,[3] Plaintiff received a GAF score of 40][4], AR 337 [During a psychiatric evaluation at Amanecer on

---

[3]    It appears that the report was prepared on or about June 23, 2010 (see AR 220, 223, 225-27).

[4]    A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision ("DSM-IV-TR"), 34 (2000).

August 23, 2010, Plaintiff received a GAF score of 45][5]), and AR 258 [On or about November 1, 2010, consultative examiner Stephen Simonian, M.D., gave Plaintiff a GAF score of 58][6], the ALJ was not required to find a more restrictive mental RFC based solely on Plaintiff's GAF scores.  See Deck v. Colvin, 2014 WL 7388792, *1 (9th Cir.)(". . . [T]he [GAF] score is used for treatment purposes and not for rating a person's ability to work."); McFarland v. Astrue, 288 Fed.Appx. 357, *1 (9th Cir. 2008)("The Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's mental disorders listings.'"); 65 Fed.Reg. 50746, 50764-65 (August 21, 2000).

To the extent that Plaintiff is contending that the ALJ failed to consider various treatment records in determining Plaintiff's mental RFC (see Joint Stip. at 3-4, citing AR 209 [LAC/USC Initial Psychiatric Evaluation, dated February 20, 2009, diagnosing Plaintiff with a mood disorder not otherwise specified and ruling out major depressive disorder], AR 203 [LAC/USC ED/Urgent Care Nursing Data Base and Flow Record, dated February 20, 2009, noting Plaintiff stated she felt empty and sad, bit her lips, and was very anxious], AR 206 [LAC/USC Initial Psychiatric Evaluation, dated February 20, 2009, noting Plaintiff stated inter alia she had poor sleep, decreased appetite at times and decreased energy, and felt hopeless and helpless], AR 223 [Exodus Triage form, dated June 23, 2010, noting Plaintiff had stopped taking Prozac the

---

[5]   A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision ("DSM-IV-TR"), 34 (2000).

[6]   A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision ("DSM-IV-TR"), 34 (2000).

month before, had up and down moods, had not slept well, had a sad effect and depressed mood, and was mildly anxious], AR 249 [Amanecer Initial Assessment Intake Progress Note, dated July 9, 2010, noting that Plaintiff had a history of recurrent depression and her most recent episode had been ongoing the past month, and that Plaintiff stated she was sad, had low self-esteem, had increased appetite leading to weight gain, felt hopeless, lacked motivation, had difficulty sleeping, lacked energy, felt extreme fatigue, and lacked focus in carrying out daily activities or conversation], AR 242-43 [Amanecer Psychiatric Evaluation form, dated August 23, 2010, diagnosing Plaintiff with Major depression, recurrent, moderate], AR 325 [Amenecer Comprehensive Follow Up Visit form, dated January 19, 2011, stating that Plaintiff was feeling unmotivated]), the records shows that the ALJ did review and consider such records in the determination about whether Plaintiff had a severe impairment and the discussion about Plaintiff's low GAF scores given by treating sources. (See AR 12-13 [citing to Exhibits 1F, 3F, 6F and 18F] and 16 [citing to Exhibits 3F and 18F]). Although the ALJ did not discuss every part of the treatment notes, the ALJ was not required to do so. See Vincent v. Heckler, 739 F.2d 1393, 1996 (9th Cir. 1984)("The Secretary, however, need not discuss *all* evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'"); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'").

Moreover, to the extent that Plaintiff is alleging that the ALJ improperly rejected the opinion(s) of treating physician(s) based on the opinion of the consultative examiner and the State agency medical physician (see Joint Stip. at 5), the ALJ's reason was specific and legitimate and based on substantial evidence in the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(holding that an examining physician's opinion may constitute substantial evidence to reject a treating physician's opinion); Magallanes v. Bowen, supra, 881

F.2d at 753 (holding that non-examining physician's reports may serve as substantial evidence to reject a treating physician's opinion).

The ALJ's determination that Plaintiff can perform simple work in a low stress environment (where there is no rapid production or required rigid quotas) (see AR 15) was supported by: (1) the November 1, 2010 opinion of the examining physician who, following a complete psychiatric evaluation, found inter alia that Plaintiff's abilities "to adapt to the stresses common normal work environment" and "to maintain regular attendance in the work place and perform work activities on a consistent basis" were moderately limited (see AR 255-59); and (2) the November 9, 2010 opinion of non-examining physician, Kay M. Gale, M.D., who found inter alia that Plaintiff's abilities "to understand and remember detailed instructions", "to carry out detailed instructions", "to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances", "to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" were moderately limited (see AR 262-65). These opinions about plaintiff's mental limitations were consistent with the ALJ's opinion that Plaintiff had the RFC to perform simple work. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174-74 (9th Cir. 2008)(holding that a plaintiff with moderate mental restrictions can nonetheless conceivably complete "simple tasks").

The consultative examiner's opinion was supported by his mental status examination, during which he made the following findings: Plaintiff was alert and oriented; Plaintiff was properly dressed and had good hygiene; Plaintiff did not have any speech disorder; Plaintiff's thought processes were coherent; Plaintiff's affect was full range and appropriate and Plaintiff's mood was generally euthymic; Plaintiff did not have delusional thoughts, hallucinations, suicidal ideation, or homicidal ideation; and Plaintiff's intellectual functioning, memory for

recent and remote events, comprehension, abstract thinking, and ability to do calculations were intact and average (<u>see</u> AR 257-58). Since the consultative examiner's opinion was based on his own clinical findings, and since the consultative examiner's opinion and the non-examining physician's opinion were not inconsistent with the opinion of any treating physician, the ALJ was entitled to rely on them.  <u>See</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007)("[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician," such findings are 'substantial evidence.'"); <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996)(holding that the findings of a non-treating, non-examining physician can amount to substantial evidence, so long as other evidence in the record supports those findings).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 29, 2015


                                    /s/
                              ALKA SAGAR
                    UNITED STATES MAGISTRATE JUDGE

9